**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR-04-1210-PCT-DGC |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Stanley Weaver Yazzie, ) | |
| Defendant. ) | |

Pending before the Court are Defendant's motions to dismiss. Dkt. ##43, 51, 62. The Government has filed responses to the motions and Defendant has filed replies. Dkt. ##49, 51, 55-56, 65. For the reasons set forth below, the Court will deny the motions.

**I.    Background.**

On November 17, 2004, the Government filed an indictment charging Defendant with four counts of aggravated sexual abuse of a minor and four counts of abusive sexual contact. Dkt. #1. Defendant was arrested on December 17, 2004, and made his initial appearance before United States Magistrate Judge Stephen Verkamp on December 20, 2004. Dkt. #3.

Judge Verkamp held a detention hearing on December 21, 2004, and ordered Defendant detained pending trial on the ground that he was a danger to the community. Dkt. #4-6. Defendant was arraigned on December 29, 2004. Dkt. #8. Defendant entered a plea of not guilty on all counts. *Id.*

1    On May 16, 2005, Defendant submitted a sealed motion asking the Court to determine
2 whether he was mentally competent to stand trial. Dkt. #29. The Government submitted a
3 response on June 3, 2005. Dkt. # 30. On June 17, 2005, the Court granted Defendant's
4 motion and entered an order that he be transported to the Federal Medical Center in
5 Springfield, Missouri ("FMC-Springfield") for a competency evaluation pursuant to
6 18 U.S.C. § 4241(d). Dkt. #31. The courtroom deputy clerk endorsed the order to be sent
7 to counsel, but inadvertently failed to endorse the order for transmission to the Marshal's
8 Office. *See* Dkt. #37. The deputy clerk might have walked the order down to the Marshal's
9 Office, but is not certain. The Marshal's Office has no record of having received the order.

10    Defendant was not transported to FMC-Springfield as ordered. On September 26,
11 2005, defense counsel sent an e-mail to the Marshal's Office inquiring about the status of
12 Defendant's competency evaluation and when he would be returned to Phoenix. Upon
13 receiving this e-mail, the Marshal's Office learned for the first time of the Court's order and
14 promptly took steps to transport Defendant to FMC-Springfield. *See id.* Defendant arrived
15 at the medical facility on October 6, 2005, some 111 days after the Court had ordered that
16 he be transported to the facility.

17    Doctors at FMC-Springfield determined over the next several months that Defendant
18 is not competent to stand trial and is unlikely to attain that capacity in the foreseeable future.
19 This determination was made by February 6, 2006. In order to avoid the need to re-transport
20 Defendant to FMC-Springfield for a risk assessment pursuant to 18 U.S.C. § 4246(a), doctors
21 at the facility proceeded to undertake a risk assessment, completing that evaluation on
22 February 16, 2006. The Marshal's Office sought an extension of time to arrange Defendant's
23 return to Phoenix, which was granted by the Court, and Defendant ultimately was returned
24 to the State of Arizona on March 7, 2006.

25    At a hearing on May 25, 2006, Defendant and the Government stipulated that
26 Defendant is not competent to stand trial. Upon receiving this oral stipulation, and having
27 reviewed the report from FMC-Springfield, the Court found from the bench that Defendant
28 is not competent to stand trial. In light of this determination, the Court concluded that trial

1  could not proceed as scheduled on June 13, 2006, and vacated the trial. Dkt. #58. The Court
2  held that the time between then and Defendant's restoration to competency would be
3  excluded under 18 U.S.C. § 3161(h)(4). Dkt. #61.

**II.     Defendant's Motions to Dismiss.**

Defendant has filed a motion to dismiss based on the 111-day delay in transporting him from Arizona to FMC-Springfield. Doc. #43. Defendant also moves to dismiss on the ground that his nearly five months of incarceration at FMC-Springfield exceeded the time allowed under 18 U.S.C. § 4241(d)(1) and violated this Court's order of June 17, 2005. Dkt. #51. Defendant argues that these delays violated his right to due process of law and warrant dismissal of all charges. Dkt. ##43, 51 (citing *Jackson v. Indiana*, 406 U.S. 715 (1972); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003)). In addition, Defendant argues for dismissal because the 111-day delay violated his rights under the Speedy Trial Act. *See* Dkt. ##51 at 4, 62 at 2-7.

An evidentiary hearing was held on May 25, 2006. Dkt. #58. The Government provided a proffer of evidence with respect to these motions, and Defendant accepted the proffer. The Background section of this order is based on the proffered evidence.

**A.     Due Process and Supervisory Power.**

Ninth Circuit law identifies two sources of authority for dismissing criminal charges on the basis of Government misconduct. The first arises from the Due Process Clause of the Fifth Amendment and is warranted when the Government engages in outrageous conduct. "'The defense of outrageous government conduct is limited to extreme cases[.]'" *United States v. Fernandez*, 388 F.3d 1099, 1238 (9th Cir. 2004) (citing *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003)). The Government's misconduct must be "so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993); *see United State v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991); *Fernandez*, 388 F.3d at 1238.

Counsel for Defendant conceded during the May 25 hearing that the deputy clerk's inadvertent failure to transmit the Court's order to the Marshal's Office does not constitute

outrageous conduct on the part of the Government. Dkt. #58. The Court agrees with this conclusion and will not dismiss the charges against Defendant on due process grounds. *See United States v. Barrera-Moreno*, 951 F.2d 1089, 1093 (9th Cir. 1991); *United States v. Wiley*, 794 F.2d 514, 516 (9th Cir. 1986).

The second source of authority for dismissing criminal charges is the Court's supervisory power. "A court may exercise its supervisory powers to dismiss an indictment in response to outrageous government conduct that falls short of a due process violation." *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004); *see Fernandez*, 388 F.3d at 1239. Dismissal on this basis requires "flagrant misbehavior" and "substantial prejudice" to a defendant. *Kearns*, 5 F.3d at 1254; *see Fernandez*, 388 F.3d at 1239; Fed. R. Crim. P. 52(a); *Bank of Novia Scotia v. United States*, 487 U.S. 250, 255-56 (1988) ("[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant."). Government negligence or incompetence do not suffice. *See Fernandez*, 388 F.3d at 1239 (negligence); *Kearns*, 5 F.3d at 1254 (incompetence).

Counsel for Defendant argued in his reply brief and at the May 25 hearing that the Court should dismiss the charges against Defendant under the Court's supervisory power. Dkt. ##51, 59. The Court disagrees.

The circumstances of this case do not show flagrant misbehavior on the part of the Government. The facts do not demonstrate any systematic delay in transporting defendants to federal medical facilities or an attitude among court staff that transportation can be delayed. This is a case of human error, not intentional or systematic misconduct that requires the sanction of dismissal.

Nor does Defendant's five-months of incarceration at FMC-Springfield require dismissal under the Court's supervisory powers. Consistent with 18 U.S.C. § 4241(d) and the Court's June 17, 2005 order, the doctors at FMC-Springfield made a competency determination within four months of his arrival at the facility. Defendant remained at FMC-Springfield for an additional month so the doctors could complete a risk assessment under § 4246(a). These facts do not demonstrate flagrant misbehavior by the Government.

The Court will deny Defendant's request that the charges be dismissed on supervisory grounds. *See Barrera-Moreno*, 951 F.2d at 1093 ("[W]e conclude that the conduct of the government was not so outrageous as to constitute a due process violation; nor was invocation of the court's supervisory powers proper."); *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988) (holding that the district court abused its discretion in dismissing an indictment under its supervisory powers based on the government's failure to promptly correct a witness' mistaken testimony that a document was incomplete).[1]

### B. The Speedy Trial Act.

The Speedy Trial Act (the "Act") requires that a defendant be brought to trial within seventy days of his indictment or initial court appearance, whichever is later. 18 U.S.C. § 3161(c)(1); *see Henderson v. United States*, 476 U.S. 321, 326 (1986). If a defendant is not brought to trial within seventy days, a court must dismiss the indictment on motion of the defendant. *See* 18 U.S.C. § 3162(a)(2); *United States v. Taylor*, 821 F.2d 1377, 1380 (9th Cir. 1987), *rev'd on other grounds*, 487 U.S. 326 (1988).

The Act identifies several categories of delay that are excluded when calculating the seventy-day period. 18 U.S.C. § 3161(h)(1). Two categories are relevant here. The first excludes "delay resulting from any proceeding, including any examination, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A). The second excludes "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization," but includes the important caveat that "any time consumed in excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(H). Unreasonable delay under § 3161(h)(1)(H) is counted toward the seventy-day limit. *See Taylor*, 821 F.2d at 1384.

---

[1] Defendant's reliance on *Jackson* and *Mink* is misplaced. *Jackson* dealt with a defendant's *indefinite* commitment on the ground of incompetency alone. 406 U.S. at 732-33. *Mink* was a civil suit for injunctive relief that did not address the standards for dismissing indictments in criminal cases. 322 F.3d at 1107-08.

- 5 -

1   Whether Defendant's motion to dismiss should be granted depends on which
2   provision of the Act applies to the 111-day delay in this case. If § 3161(h)(1)(H) controls,
3   ten days for transportation would be excluded, but the remaining 101 days would be
4   counted.[2] Because the remaining 101-days exceed the seventy-day speedy trial limit, the Act
5   would be violated and Defendant's motion would be granted. If § 3161(h)(1)(A) controls,
6   however, the Court would exclude the entire 111 days on the basis of the cases discussed
7   below, the Act would not be violated, and Defendant's motion would be denied.

Defendant argues that this is a delay in transport governed by § 3161(h)(1)(H), and cites Ninth Circuit cases that have applied the transport provision. *See United States v. Antoine*, 906 F.2d 1379, 1381 (9th Cir. 1990); *Taylor*, 821 F.2d at 1384.[3] In *Antoine*, the defendant's transport from a mental competency examination to the district in which the case was pending took more than ten days, and the court excluded only the ten days presumed reasonable under the statute. 906 F.2d at 1381. In *Taylor*, the Marshal's Office took fourteen days to transport a fugitive defendant because it wanted to take a large group of prisoners at once. The court found four days unreasonable and not excludable from the seventy-day limit. 821 F.2d at 1384. In both cases, the delays occurred during the actual transportation of prisoners by the Marshal's Office.

The Government argues that § 3161(h)(1)(A) governs this case because the delay occurred not in the actual transportation of Defendant, but in the period between entry of the

---

[2] Section 3161(h)(1)(H) states that any transportation period in excess of ten days is "presumed" to be unreasonable. The Government makes no attempt to rebut the presumption in this case.

[3] Defendant also claims that the five months he spent at FMC-Springfield exceeded the time allowed under 18 U.S.C. § 4241(d)(1). Dkt. #51. Defendant cites no authority for the proposition that a violation of § 4241(d)(1) provides an independent grounds for dismissal. To the extent that Defendant argues that the five months he spent at FMC-Springfield violated the Speedy Trial Act, he is incorrect. The Ninth Circuit has held that any time consumed by a competency examination is excludable time under § 3161(h)(1)(A), regardless of whether the examination exceeded the statutory timeframe for competency evaluations. *United States v. Miranda*, 986 F.2d 1283, 1285 (9th Cir. 1993).

- 6 -

1 Court's order and receipt of the order by the Marshal's Office. The Government cites *United States v. Vasquez*, 918 F.2d 329 (2d Cir. 1990), a case similar to this one. In *Vasquez*, the district court ordered transport of the defendant for a psychiatric examination. There was no record that the Marshal's Office received the order, and four months passed before the Government learned that the defendant had not been transported. The district court then signed a second order directing the mental exam, but another four months elapsed before the defendant finally arrived at the examination facility. *Id.* at 331.

The Second Circuit acknowledged the ten-day limit for reasonable transport found in § 3161(h)(1)(H), but held that § 3161(h)(1)(A) controlled because the delays "arose from proceedings to determine [the defendant's] competency and were prior to the conclusion of the hearing thereon." *Id.* Because § 3161(h)(1)(A) contains no language limiting excludable delays to "reasonable" periods, the Second Circuit held that the entire delay was excludable, even if unreasonable. *Id.* In reaching this conclusion the Second Circuit relied on the Supreme Court's decision in *Henderson v. United States*, 476 U.S. at 330, which held that the exclusion of time under § 3161(h)(1)(F) was automatic and not subject to a reasonableness exception.

The Court holds that this case is governed by § 3161(h)(1)(A), not § 3161(h)(1)(H). The relevant Ninth Circuit decisions, *Antoine* and *Taylor*, both involved delays in the actual transport of defendants and therefore clearly came within § 3161(h)(1)(H). This case involved Defendant's detention in Arizona for 101 days before the Marshal's Office received the order to transport him to FMC-Springfield. The delay did not occur during transport. Thus, although the delay was a most serious clerical error and plainly regrettable, it was not a delay "resulting from transportation" as required by § 3161(h)(1)(H). Rather, it was a "delay resulting from any proceeding, including any examination, to determine the mental competency or physical capacity of the defendant" as required by § 3161(h)(1)(A).[4]

---

[4] Although not entirely clear, Defendant appears to argue that the error in this case occurred after the Court had found him incompetent and had ordered him restored to competency, and therefore did not occur during a "proceeding . . . to determine . . . mental

- 7 -

1 The legislative history behind § 3161(h)(1)(H) supports this conclusion. The ten-day 2 transportation rule grew out of a Congressional desire that marshals not delay the transport 3 of prisoners for economic reasons, such as waiting for more prisoners to be assembled before 4 incurring the cost of moving them. *See Taylor*, 821 F.2d at 1384, n.10. The provision was 5 aimed at marshals and the actual process of transportation, not clerical errors that occur 6 during competency proceedings.

7 Because the delay in this case is governed by § 3161(h)(1)(A), the entire period is 8 excluded from the seventy-day trial limit. *Vasquez*, 918 F.2d at 333. The Court will 9 therefore deny Defendant's motion to dismiss.

**C. Civil Commitment Pursuant to 18 U.S.C. § 4246.**

11 Defendant contends that this case must be dismissed because he was returned to the 12 jurisdiction of this Court without the initiation of any proceedings under 18 U.S.C. § 4246 13 and this Court lacks the legal authority to order him into the custody of the Attorney General 14 for proceedings under that provision. Dkt. #62 at 7-14. In support, Defendant cites *Weber* 15 *v. United States District Court*, 9 F.3d 76 (9th Cir. 1993). The Court concludes, however, 16 that *Weber* is distinguishable and that the Court has the authority to return Defendant to the 17 custody of the Attorney General for further proceedings under § 4246.

18 A jury convicted Weber of three counts of making threats against the President of the 19 United States. The district court subsequently determined that Weber suffered from a mental 20 disease or defect and imposed a provisional sentence, during which Weber was to receive 21 treatment at FMC-Springfield pursuant to 18 U.S.C. § 4244. Following one year of 22 treatment, the director of FMC-Springfield certified that Weber had recovered from his 23 mental disease or defect and recommended that the district court proceed to final sentencing. 24 At the sentencing hearing, the district found that the director had not made an evaluation

---

competency" under § 3161(h)(1)(A). Dkt. #62. If this is Defendant's argument, it is incorrect. Defendant moved for a determination of incompetency on May 16, 2005. Dkt. #29. The Court did not make a final determination of incompetency until May 25, 2006. Thus, the clerical error in June of 2005 occurred during the proceeding to determine competency, not after it was completed.

- 8 -

1 under § 4246 to determine whether Weber was a danger to the community. Noting that
2 Weber was due to be released for time served, the district court stayed the entry of Weber's
3 sentence and ordered that he be returned to FMC-Springfield for a § 4246 evaluation. 9 F.3d
4 at 77-78. On appeal, the Ninth Circuit held that the district court lacked the authority to
5 initiate a § 4246 hearing because that section requires that the person in question suffer from
6 a mental disease or defect and the director of FMC-Springfield had certified that Weber no
7 longer suffered from such infirmities. *Id.* at 79.

8 In this case, the Court has found, pursuant to 18 U.S.C. § 4241(d), that Defendant is
9 incompetent to stand trial and unlikely to attain the capacity to stand trial in the foreseeable
10 future. The parties agree with this finding. Thus, unlike the defendant in *Weber*, who was
11 competent to proceed with sentencing, Defendant Yazzie is subject to the provisions of
12 § 4246. *See* 18 U.S.C. § 4241(d); *United States v. Ohnick*, 803 F.2d 1485, 1486 (9th Cir.
13 1986) ("Ohnick appeared in the [district] court for a final determination on his competency
14 to stand trial. The court found that neither was Ohnick presently competent nor was there
15 a substantial probability that he would obtain competency in the foreseeable future. As a
16 result, Ohnick was then subject to the provisions of 18 U.S.C. § 4246."); *United States v.*
17 *Rivera-Moreles*, 365 F. Supp. 2d 1139, 1142 (S.D. Cal. 2005) (stating that the Ninth Circuit
18 in *Weber* concluded that "§ 4246 was not applicable because § 4246 only applies where the
19 defendant is determined to be incompetent, and Weber was deemed competent by the district
20 court"); *United States v. Trillo-Cerda*, 244 F. Supp. 2d 1065, 1069 (S.D. Cal. 2002)
21 (distinguishing *Weber* and stating: "Here, all agree that defendant in his current unmedicated
22 state is incompetent, and the court has so held. Thus, § 4246 *is* otherwise applicable.")
23 (emphasis in original). Moreover, unlike the situation in *Weber*, the doctors in this case
24 initiated § 4246 proceedings by completing a risk assessment to determine whether
25 Defendant was a danger to the community.

26 In enacting §§ 4241-48, Congress intended to provide protection for society as well
27 as the rights of criminal defendants. *See Trillo-Cerda*, 244 F. Supp. 2d at 1069. Defendant
28 has cited no case law, and the Court has found none, "holding that where a federal pretrial

- 9 -

detainee is determined to be incompetent under § 4241, a dangerousness certification under § 4246 is precluded simply because the defendant happens not to be in the physical custody of the treatment facility where he was originally committed." *Id.* The Court concludes that it has the authority under § 4241(d) to return Defendant to the custody of the Attorney General for the limited purpose of allowing the doctors at FMC-Springfield to certify Defendant as dangerous pursuant to § 4246, should they find that such a certification is warranted. *See id.*; *Rivera-Moreles*, 365 F. Supp. 2d at 1145. The Court will deny Defendant's motion to dismiss with respect to this issue.

**IT IS ORDERED:**

1. Defendant's motions to dismiss (Dkt. ##43, 51, 62) are **denied**.

2. Defendant is committed to the custody of the Attorney General for the purpose of providing FMC-Springfield an opportunity to determine whether a dangerousness certification is warranted under 18 U.S.C. § 4246.

DATED this 25th day of September, 2006.

David G. Campbell
United States District Judge